UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

THOMAS TANNER,                          :
      Plaintiff,                        :
                          :
      v.                                :    Case No. 3:19cv1432(KAD)
                          :
FRANKIE CUEVAS, DDS, ET AL.,            :
      Defendants.                       :

**MEMORANDUM OF DECISION RE: MOTION TO DISMISS**

Plaintiff, Thomas Tanner ("Tanner"), currently incarcerated at the MacDougall-Walker Correctional Institution ("MacDougall-Walker"), filed this civil rights complaint *pro se* asserting that from September 2018 to September 2019, Dr. Frankie Cuevas and Dental Assistant A. Duffy were deliberately indifferent to his need for a new lower partial denture in violation of the Eight Amendment to the United States Constitution. Upon initial review, the Court dismissed the claim against Dental Assistant Duffy in her individual and official capacities pursuant to 28 U.S.C. § 1915A(b)(1) and (2) and dismissed the deliberate indifference claim seeking monetary damages from Dr. Cuevas in his official capacity pursuant to 28 U.S.C. § 1915A(b)(2).  The Court permitted the claim that Dr. Cuevas was deliberately indifferent to Tanner's need for a new lower partial denture as of September 24, 2018 when his lower denture became unusable to proceed against Dr. Cuevas in his individual capacity and in his official capacity, to the extent that Tanner sought declaratory and injunctive relief.  *See* Am. Initial Review Order, ECF No. 10.

Defendant Cuevas now moves to dismiss the sole claim asserted against him.  For the reasons set forth below, the motion is granted.

**Standard of Review**

When ruling on a Rule 12(b)(6) motion to dismiss, the court "accepts as true all of the factual allegations set out in [the] complaint, draw[s] inferences from those allegations in the light most favorable to the plaintiff, and construes the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted). In addition to the facts set forth in the complaint, the Court may also consider documents either attached to the complaint, incorporated into it by reference, or integral to it and matters of which the Court can take judicial notice. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks and citation omitted).

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when ... plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* The plausibility standard is not the equivalent of a probability standard but requires something more than the assertion of allegations suggesting the mere possibility that the defendant engaged in unlawful conduct. *See id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"Where ... the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

Nevertheless, a *pro se* plaintiff's complaint still must state a plausible claim for relief.  *Id.* (citations omitted).

**Allegations and Facts Demonstrated through the Exhibits to the Complaint**

In August or September 2015, Dr. Cuevas repaired Tanner's partial lower denture. Compl., ECF No. 1, at 9 ¶ 7; at 31, Ex. A.  On November 24, 2015, Tanner's partial lower denture cracked and went down the toilet.  *Id.*; at 32, Ex. A.  Dr. Cuevas instructed Tanner to fill out a lost property form.  *Id.*  Prison officials did not approve Tanner's request for a new partial lower denture.  *Id.*

In December 2017, Tanner sent an inmate request to the Dental Department claiming that he needed to have his upper denture adjusted.  *Id.* at 23, Ex. 5.  In response, a dental staff member informed Tanner that he was scheduled for a dental appointment on January 30, 2018. At an appointment on that date, Albert Beuscher, DMD, addressed Tanner's complaints that chewing on the left side of his mouth displaced his full upper denture.  *Id.* at 32, Ex. B.  Dr. Beuscher adjusted Tanner's upper denture and noted that two teeth, numbers 22 and 27, showed decay and needed to be filled.  *Id.*  Tanner alleges that he informed Dr. Beuscher that his lower denture had been cracked since 2015, he had been getting painful sores and he could not eat properly.  *Id.* at 10 ¶ 9.  Tanner's dental records include no notation by Dr. Beuscher as to Tanner's complaint of a cracked lower denture.  *Id.* at 32, Ex. B.

On March 20, 2018, Dr. Cuevas examined Tanner and filled the cavities identified by Dr. Beuscher during the prior January 2018 appointment.  *Id.* ¶ 10; at 36, Ex. C.  When Tanner returned to his cell, he put his lower denture in, but it did not fit properly due to the new fillings in teeth numbers 22 and 27.  *Id.*  Tanner returned to see Dr. Cuevas that afternoon wearing his

lower denture.  During that visit, Dr. Cuevas adjusted the fillings so that the lower partial denture would fit properly.  *Id.*  Tanner alleges that Dr. Cuevas acknowledged that the lower partial denture was cracked and suggested that he would submit a request to have Tanner's lower denture repaired.  *Id.*  However, Dr. Cuevas's entry in Tanner's dental records reflect that Tanner had previously alleged that his lower denture had gone down the toilet and that the lower denture that he wore during the March 20, 2018 appointment seemed to have been repaired.  *Id.* at 36, Ex. C.

On September 24, 2018, Tanner submitted an inmate request to the Dental Department indicating that he needed to be seen by the dentist because his partial lower denture had broken. *Id.* at 10 ¶ 11; at 17, Ex. 2.  In response to this request, Dental Assistant Duffy indicated in writing that Tanner had been scheduled to be seen in the dental department.  *Id.* at 17, Ex. 2. Tanner submitted an inmate request dated January 28, 2019 to the Dental Department regarding the scheduling of an appointment to be seen by the dentist due to his need for a new partial lower denture.  *Id.* at 16, Ex. 1.  In response, Dental Assistant Duffy indicated in writing that that Tanner was still scheduled to be seen but that the waiting list for appointments was very long. *Id.*

On May 17, 2019, Tanner submitted an inmate request to the Dental Department indicating that he needed a new partial lower denture to eat and that he considered the need for a new denture to be urgent.  *Id.* at 10 ¶ 12; at 29, Ex. 10.  On June 25, 2019, Tanner filed a grievance requesting to be seen by the dentist because he needed a new partial lower denture. *Id.* ¶ 13; at 19, Ex. 4.  On July 31, 2019, Dr. Cuevas examined Tanner and noted that he was not wearing his lower partial denture.  *Id.* at 11-12 ¶ 18; at 19, Ex. 4; at 37-40, Ex. C.  Tanner

4

informed Dr. Cuevas that the partial lower denture had broken and that he had sent the pieces of the denture to his family. *Id.* Tanner refused to request a family member to mail the pieces back so Dr. Cuevas could attempt to repair the denture. *Id.* Tanner believed that he was entitled to a new partial denture. *Id.*

On September 4, 2019, Dr. Cuevas informed Tanner that he had been approved to receive a new partial lower denture and that he would be seen in the Dental Department when it was his turn. *Id.* at 12 ¶ 22; at 30, Ex. 11. As of the date that Tanner signed the complaint, September 12, 2019, he had not received his partial lower denture. *Id.* at 14 ¶ 29. Additional facts will be set forth as necessary.

**Discussion**

Dr. Cuevas seeks dismissal because the allegations do not state a plausible claim that he was deliberately indifferent to Tanner's dental needs or the alternative, that he is entitled to qualified immunity. Tanner opposes the motion on both grounds.

### Eighth Amendment - Deliberate Indifference Dental Needs

The Eighth Amendment prohibits deliberate indifference by medical providers to an inmate's serious dental needs. *See Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (applying deliberate indifference standard to dental treatment claim) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)). To state a claim for deliberate indifference to a serious dental or medical need, a plaintiff must meet a two-pronged test. Objectively, the inmate's medical need or condition must be "a serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir. 2003). "[D]ental conditions, like other medical conditions, may be of varying severity," *Chance*, 143 F.3d at 702, and not all dental

conditions will be sufficiently serious to meet this objective standard.  Factors relevant to the seriousness of a dental or medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Id.*  If a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," rather than a denial of any treatment for his or her condition, "it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original) (quoting *Chance*, 143 F.3d at 702).

The second prong is subjective and goes to the defendant's state of mind. Under this *mens rea* prong, the plaintiff must allege that the defendant "knew of and disregarded the plaintiff's serious [dental] needs.'" *Harrison*, 219 F.3d at 137 (quoting *Chance*, 143 F.3d at 703).  The Second Circuit has defined the mental state of deliberate indifference as "[the] equivalent [of] subjective recklessness, as the term is used in criminal law" and that it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious . . . harm [to the inmate's health] will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer v. Brennan,* 511 U.S. 825, 836-37, 839-40 (1994).

Mere negligent or inadvertent conduct, however, does not constitute deliberate indifference.  *See Estelle*, 429 U.S. at 106 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Salahuddin*, 467 F.3d at 280 ("recklessness entails more than mere negligence").  Nor does a difference of opinion between a medical provider and an inmate regarding a diagnosis or appropriate medical treatment. *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Upon further review of Tanner's factual allegations and the parties' submissions on the motion to dismiss, it is apparent that the Eighth Amendment claim comprises three separate instances of alleged deliberate indifference by Dr. Cuevas.  Tanner alleges that Dr. Cuevas was deliberately indifferent to: (1) his need to have his cracked lower partial denture repaired following the March 2018 appointment; (2) his need for a new lower denture as of September 2018 when his lower denture broke; and (3) his need for a prompt dental appointment in September 2019 to have his new lower denture fabricated. The Court addresses each in turn.

While Tanner is clearly dissatisfied with the dental treatment he received, it is clear that at no point in time between March 2018 and September 2019, did his need for a better or new lower denture rise to the level of being sufficiently serious for purposes of an Eighth Amendment claim.

**Cracked Lower Partial Denture**

Tanner asserts that at an appointment at the end of January 2018, Dr. Beuscher examined him in response to his December 26, 2017 request to have his upper denture adjusted.  Dr.

7

Beuscher adjusted his upper denture, instructed Tanner on how to maintain his upper denture and that cavities in two of the teeth in his lower jaw that would be filled at the next visit.  Compl. at 32, Ex. B.  Tanner alleges that during the appointment, he informed Dr. Beuscher that his lower partial denture was cracked and was causing him painful sores on his gums and difficulty eating and required repair.  Dr. Beuscher's entry in Tanner's dental records does not reflect any complaints by Tanner regarding his lower partial denture or sores on his lower or upper gums. *Id.*  In March 2018, Dr. Cuevas filled the cavities in the two teeth identified by Dr. Beuscher during the January appointment and adjusted the fillings to ensure that Tanner's lower denture fit properly.  *Id.* at 36, Ex. C.

Tanner does not allege, nor do his dental records reflect, that he informed Dr. Cuevas that his lower denture was cracked or unusable, that he could not eat properly with the lower denture or that he had experienced sores from using the lower denture.  In fact, Dr. Cuevas noted that the lower partial denture appeared to have been repaired recently.  *Id.*  Thus, Tanner has not alleged that he suffered from a serious or painful dental need at the time of his March 2018 appointment with Dr. Cuevas or that Dr. Cuevas was aware of such a condition or symptoms.[1]

Accordingly, Tanner has failed to state a plausible claim that he suffered from sufficiently serious dental condition in March 2018 or thereafter as a result of his cracked lower denture for purposes of this Eighth Amendment claim. In addition, in light of this failure, the allegation that Dr. Cuevas failed to submit a request for repairs to the lower denture does not

---

[1] Indeed, Tanner's dental records contain no complaint that his lower denture had been causing him pain or difficulty eating or chewing.  And although Tanner claims that Dr. Cuevas acknowledged his cracked denture during the March 2018 appointment and indicated that he would submit a request to repair the lower denture, the dental records do not reflect this acknowledgement by Dr. Cuevas or indicate that he would submit a request to repair the lower denture.  *Id.*  Nor does Tanner allege that after the March 2018 appointment, he submitted any requests indicating that the cracked denture was causing him pain or difficulty eating or that he needed to have the lower denture repaired.

constitute deliberate indifference.  At most, the alleged failure to submit the request to repair the lower denture might constitute negligence.  But as discussed above, negligence or medical malpractice is not enough to plausibly allege deliberate indifference.  *See Salahuddin*, 467 F.3d at 279-80 (Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.).

The motion to dismiss the claim that Dr. Cuevas was deliberately indifferent to his need to have his cracked lower denture repaired in March 2018 or thereafter is granted.

### Broken/Unusable Lower Partial Denture

Dr. Cuevas next saw Tanner on July 31, 2019 in response to Tanner's request to be seen after the lower denture had completely broken. Dr. Cuevas again asserts that neither the allegations in the complaint nor the attached dental records, demonstrate that Tanner suffered from a serious dental condition as a result of the broken lower denture.  Alternatively, Dr. Cuevas argues that neither the allegations nor the dental records attached to the complaint plausibly allege that he was deliberately indifferent to Tanner's need for a new lower denture.

Cases where courts have found a serious dental need due to a denial of or delay in providing dentures to an inmate have generally involved allegations of severe pain and other serious and/or chronic symptoms.  *See, e.g.*, *Wynn v. Southward*, 251 F.3d 588 (7th Cir. 2001) (ruling that allegations that an inmate suffered bleeding, headaches and disfigurement as a result of not having his dentures demonstrated that the inmate had a serious medical need, supporting his § 1983 claims that his Eighth Amendment rights were violated when he was deprived of dentures); *Farrow v. West*, 320 F.3d 1235, 1244-45 (11th Cir. 2003) (few or no teeth and a definite need for dentures, in addition to pain, continual bleeding, swollen gums, two remaining

teeth slicing into the gums and weight loss establishes a serious medical need); *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (inmate with no dentures suffering severe pain, bleeding gums and breaking teeth could have a serious medical need); *Patterson v. Lichtenstein*, No. 3:18-CV-2130 (MPS), 2019 WL 1596347, at *3 (D. Conn. Apr. 15, 2019) (assuming inmate's allegations that he had experienced "difficulty eating and that "food bec[a]me[] lodged in his gums causing severe pain and canker sores," and possibly an infection were sufficient to meet seriousness prong of Eighth Amendment standard); *Williams v. Jacobson*, No. 15 CV 28 (VB), 2016 WL 2733136, at *3–4 (S.D.N.Y. May 9, 2016) (delay in replacing broken denture that caused "daily cuts" and bleeding and severe pain to inmate's upper gums and "inhibited inmate's ability to eat properly" over six-month-period "before his referral was submitted [for a new denture], and for another full year after the referral" constituted serious delay that met objective prong); *Tripp v. Commonwealth of Pa.*, No. Civ. 1:CV-05-1227, 2005 WL 3132317, at *3 (M.D. Pa. Nov. 22, 2005) (denying a motion to dismiss and permitting an Eighth Amendment claim to go forward where plaintiff had teeth extracted by a prison dentist and was refused further treatment, including the provision of dentures, when he suffered from pain and continual bleeding gums).

Here, Tanner alleges that on September 24, 2018, and January 28, 2019, he submitted requests addressed to the dental department indicating that his lower partial denture had broken and was no longer usable. Dental Assistant Duffy, not Dr. Cuevas, responded to both requests indicating that Tanner had been scheduled to be seen. In neither request did Tanner indicate that he was unable to eat or was otherwise experiencing any pain or other symptoms because he did not have a usable lower denture.

10

Four months later, in May 2019, Tanner submitted a request to the dental department stating that needing a denture to eat should be considered urgent.  Because he did not receive a response to that request, on June 26, 2019, he filed a medical grievance indicating that he considered it a priority to be examined and fitted for a new lower denture.  It was not until Tanner submitted a request addressed to the dental department on July 25, 2019 that he stated that he had experienced sores on his gums and difficulty chewing because he could not use his lower denture.  Compl. at 27, Ex. 8.  Dr. Cuevas examined Tanner on July 31, 2019, six days later.  *Id.* at 37-40, Ex. C.  Tanner does not allege that during the examination, he informed Dr. Cuevas that he was having trouble eating or had experienced pain or weight loss or any other medical symptoms as a result of not having a usable lower denture.  And Dr. Cuevas's entry in Tanner's dental records reflects that he performed x-rays and a full physical examination of Tanner's teeth and gums.  *Id.* at 39.  He noted normal soft tissue, no pain upon palpation and no complaints by Tanner of any painful conditions.  *Id.*  In response to the motion to dismiss, Tanner concedes that he did not complain about painful gums during the July 31, 2019 appointment.  Obj. Mot. Dismiss, ECF No, 20, at 16.

Dr. Cuevas argues that Tanner's failure to allege that he suffered from painful sores, difficulties with chewing or other medical symptoms arising from eating without a lower partial denture; the meager references to painful gums and difficulties in eating in his inmate requests and the grievance to the dental department, and Tanner's dental records which reflect normal soft tissues, no pain upon palpation and no complaints by Tanner of any painful conditions,  all combine to defeat any plausible claim that he suffered from a sufficiently serious condition as a result of his broken and unusable lower denture as to implicate the Eighth Amendment. The

court agrees.

The exhibits attached to the complaint reflect that Tanner complained that he needed a lower denture to eat and/or was having difficulty chewing at the earliest on May 2019 and that he had experienced painful sores on his gums at the earliest on July 25, 2019.[2]  Tanner does not allege, nor do his dental records reflect, that he complained to Dr. Cuevas during his appointment on July 31, 2019, that he had experienced either pain or difficulty eating or chewing without his lower denture.  And the examination revealed quite to the contrary. Furthermore, there are no allegations that Tanner's condition resulted in or could result in degeneration or chronic or daily pain.  Thus, neither the allegations nor the records attached to the complaint, state a plausible claim that Tanner suffered from a serious dental need after his lower denture broke and became unusable at the end of September 2018.

Further, as noted, at the July 31, 2019 appointment, Tanner did not complain that he was having difficulty eating or chewing or that he was experiencing pain in his gums and the examination revealed no issues in this regard. Thus, there was no reason for Dr. Cuevas to order any treatment for Tanner beyond recommending that he be fitted for a new lower denture, which he did. These allegations simply do not "evince[] a conscious disregard of a substantial risk of serious harm" to Tanner's dental health, *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citation omitted), even if not having a usable lower denture created a sufficiently serious dental condition so as to implicate the Eighth amendment.

In sum, the motion to dismiss the claim that Dr. Cuevas was deliberately indifferent to his dental needs after his lower denture broke in September 2018 is granted.

---

[2]  There are no allegations that Dr. Cuevas saw either of these documents prior to seeing Tanner on July 31, 2019.

**Appointment to Fabricate New Lower Partial Denture**

Lastly, Tanner alleges that on September 4, 2019, he learned that the request for authorization to fabricate a new lower denture submitted by Dr. Cuevas was approved by the Director of Dental Services.  Tanner alleges that Dr. Cuevas determined that Tanner would be called to the dental department for the fabrication of the new lower denture when it was his turn. Tanner claims that Dr. Cuevas should have immediately scheduled him to be seen for the fabrication of the new denture and that the failure to do so rises to the level of deliberate indifference.

Dr. Cuevas again asserts that Tanner did not allege that he was suffering from a serious dental condition at any point after the July 31, 2019 appointment.  In his August 22, 2019 request addressed to Dr. Cuevas, Tanner stated that it was very difficult to eat without the lower denture because he had to also remove the top denture in order to do so and he hoped to be scheduled to have a new lower denture fabricated as soon as possible.  Compl. at 30, Ex. 11.  He did not allege that he was experiencing pain, weight loss, a lack of nutrition or any other symptoms due to not having a usable lower denture.  *Id.*  Given the absence of allegations that Tanner suffered from a serious dental need, the delay in scheduling him for an appointment for fabrication of the lower denture, which at the time of the filing of the complaint was nine days, does not rise to the level of deliberate indifference.

The motion to dismiss the claim that Dr. Cuevas was deliberately indifferent to his dental needs when he delayed scheduling him for an appointment for the fabrication of a new lower denture is granted.[3]

---

[3]  Because the Court has granted the motion to dismiss on this ground, it is unnecessary to reach the question of defendant's qualified immunity.

**CONCLUSION**

The Motion to Dismiss, [**ECF No. 17**], is **GRANTED**.  The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this 10th day of August 2019.

___/s/_____
Kari A. Dooley
United States District Judge
